The next case, number 25-1354, Sandra Natasha St. John v. Andrea Joy Campbell. At this time, would counsel for the appellant please introduce himself on the record to  Michael Ugolini. May I reserve a couple of minutes? Two minutes? Yes, sure. Yeah. Thank you. Judge, this involves a lawful permanent resident who was convicted of some serious crimes, mayhem, assault. She was alleged to have broken into the victim's apartment in the wee hours of the morning. And it's kind of an implausible crime. She heated cooking oil that was in the stove from the night before and then poured it on the victim and her children that were sleeping in their beds. The problem is the petitioner and the victim are alleged to be romantic competitors as they each had a child by this particular man, a man named Gamble. And so, the other problems with the case, or the main problem with the case is... Before you get into the merits of the claim, can you just address the custody issue? Yes, sir. The custody issue. Well, she was in constructive custody at the time she filed her habeas petition because she's subject to a severe restraint on her liberty. And that's the only test in this circuit so far for whether there's custody jurisdiction in a habeas case. She's... Because of the conviction, it's an aggravated felony under the immigration laws. And she's permanently barred from re-entering the United States. She has a U.S. citizen child. Who's imposing that restraint? The immigration laws. But the person being sued is the warden. Right. But she's challenging the conviction that leads to her inadmissibility of the United States. But, I mean, for a restraint that's being imposed by somebody else based on that conviction, why wouldn't the right person to be claiming that's putting her in custody is the person imposing the restraint? Well, the state of Massachusetts is creating the custody because they're the ones that convicted her and refused to vacate their unlawful conviction. Her trial counsel's defense was abysmal, to say the least. She never saw the case as a case of domestic violence. And she actually posed a defense of mistaken identity, which the two women knew each other for years. How could it be mistaken identity? The victim gave differing accounts of who did this to her. Counsel, what does that have to do with Judge Barron's question? You mean on the question of custody? No, you're getting back to the facts of the case, as I understand. Right? What does it have to do with custody? Is that what you're asking? Yeah. Yes, I am. Well, I guess there's kind of a dark undercurrent. Excuse me. Aren't just your argument for custody here. You're basically asking us to create an entirely new law, are you not? I'm not aware, and this is what the district court said, I'm not aware of any precedent that would support your argument that what we have here because of this permanent bar under the immigration law to reentry, that that meets the definition of custody for habeas purpose. Well, there's a 1953 case, Shaughnessy, where the Supreme Court of the United States said a person that's excluded at the border, a person who can't come into the United States, their liberty is restrained, and they can maintain a habeas petition, I'm sorry. But counsel, the person in that case, wasn't that person actually restrained? I understood that the person was being held on Ellis Island, so in fact they were restrained. That's true, but when you say held, if he could go to any other country that would take him, how was he held? Who was he suing? Who was the habeas petition brought against there? Must have been the, I'm not sure, Judge, maybe- It was the Immigration Authority. It was the Immigration Authority? I'm not sure. But you're not bringing a 2241, you're bringing a 2254. At least the district court treated you as bringing a 2254, and you haven't- I'm challenging a state law, a state conviction. Yeah. Yeah. So I don't know, who should I bring it against? Who should I have brought it against? Whoever's restraining you. I'm not sure who's restraining him. It's a combination of a criminal conviction that's unlawful, and a federal law that prohibits her admissibility to the United States. Who should I sue? It's not clear. But back to the merits. One of the difficulties, and there are some cases that say the merits should carry on this question. Can I just go back to your question to us? Yes, sir. With respect, you have to answer that question. What question is that? The one you just asked, who should you sue? You've chosen to sue the state official. I chose- You need to make an argument to us as to why that's the appropriate person for the habeas petition. Because that conviction creates her permanent inadmissibility. And she can cite cases from the other circuits that say, well, that's a collateral consequence of your conviction. Yeah. Yeah. And what's the answer to that? How it can be collateral. It's collateral in the sense that it's insignificant, that it's insubordinate. It's like you lost your license for 90 days. You had to go to drunk driving school. Those are collateral consequences. It's collateral in the sense that the entity that imposes the conviction isn't imposing the restraint. But your honor, what does that have to do with it? Judge Stevens, if you read the Padilla versus Kentucky case, he said that's a lot of malarkey. That's collateral to the advice being given under the Sixth Amendment. This is a question whether it's collateral to the conviction for purposes of custody. You need to make an argument as to why that's wrong. Judge Stevens' reasoning was, since there's so many crimes now, even misdemeanors that make you removable, that that's not collateral. With respect to the advice that the attorney is supposed to give, that's a different question. Well, the point is that for aliens or non-citizens, that their conviction, the collateral consequences are the whole thing. The misdemeanor's nothing. They may get six months in jail for drunk driving, but it may result in them being removed from the United States. And to say that, well, that's not a significant restraint on your liberty. Look at this woman. She has a child in the United States she can't see regularly. Her mother died while she did the 12-year sentence for mayhem and other crimes. She can never visit her mother's grave. If that's not a significant restraint on her liberty, what is? Sitting in jail, she's indigent. She has no resources. She writes to the Committee for Public Counsel Service, who gave them this pathetic defense, and says, will you help me? And they say, well, we can't help you unless you have some new issues to explore. She's not a lawyer. She barely graduated. I think she's a high school dropout, and she's semi-literate, and she's supposed to file a habeas petition alleging all these complicated issues that somehow vitiate her conviction. So she wrote to them, and she asked. So when she asked me, I'm going to get deported, I walked over to the courthouse. I ran the victim's names through the court indices and her boyfriend's, and I found a slew of, what do you call them, abuse prevention proceedings against the fathers of her children. The father of her oldest child appears to be a psycho who has about six or seven abuse petitions, including criminal proceedings, where he's alleged to have done the same things they said this woman did to this victim. Counsel, I think you've moved on to the time bar issue, and with those... Oh, the time bar issue. Judge, on the time bar issue... Well, that seems to me that's what you're essentially addressing now. Yeah. On the time bar issue... And what are you... Those facts that you cite, are they in support of an argument of actual innocence or equitable tolling or both? Actual innocence. Yes, sir. So under the time bar, we can beat this time bar statute seven ways to Sunday. It says the one year runs from the latest of the four possibilities. Counsel for Respondent seems to cross that off as though it runs from the earliest of the four conditions. So on one of them, the lower court, the Superior Court in Hamden County, took 15 months to decide this case. When I originally filed the motion, I asked the judge if I could depose the three principal witnesses. He denied that. There's a Superior Court rule that says, response to a motion for a new trial shall be filed within 30 days. This judge, without even holding a conference, gave him four months. Take your time. This is to equitable tolling? Is this on equitable tolling? Yeah. No, this is on... You mean what I'm talking about, what issue it goes to? Yeah. It goes to the... Time bar. The time bar. Yes, sir. Well, one of them says... I think we're over time, but you reserved two minutes, and the rest is in your brief. Thank you, sir. Yeah. Thanks. Good morning. May it please the Court, Assistant Attorney General Tara Johnston, on behalf of the Respondent. This Court should affirm the District Court's dismissal of Ms. St. John's habeas petition for two reasons. The first reason is, as this Court has noted itself, that Ms. St. John was not in custody for habeas purposes at the time she filed her petition. She completed her sentence on December 31st, 2021, and she was released to immigration officials at that time. For 2254 purposes, she has not been in state custody since that point. Can I just play it out? So if this was an unconstitutional conviction, I'm not saying it was, if it was, and if there was a very good reason why it was not untimely, right? So let's imagine even an actual innocence claim is perfectly strong. Your position still is, you can't do anything because she's not in custody. Correct, Your Honor. What, in your view, is recourse from that unconstitutional conviction with respect to the prohibition against entering the U.S.? Well, Your Honor, so as this Court noted, yes, it is the response position because under Mullang Mee Cook, it's very clear that the custody issue is jurisdictional. Now certainly the habeas statute has some, as the Supreme Court recognized in Daniels Supreme Court in the United States and the Coss case, Lackawanna v. Coss, that the habeas statute has some harsh results, there are certain procedural requirements, and one of them is that you have to be in custody. Now I note this Court's concern, and I think one option before Ms. St. John had been deported may have been to file a motion for a stay of removal until the state court. With respect to the bar to entry, if she wants to challenge it, you just say that's whatever relief you can get under the immigration statutes and maybe 2241, that's what's left to her? Well, I think there is, I think that what I understand from the case law is that there is another option, a petition for a quorum, nobis, that a petitioner could file once she's no longer in, once the petitioner's no longer in custody. So that, and I refer this Court to the case Chede v. United States, 568 U.S. 3042, 2013 U.S. Supreme Court case, and I know the Seventh Circuit has followed that in certain situations. I'm not sure the relief that would come about. And I'm not sure if there would be any in this case, given... That was the post-Quorumatsu, there was quorum nobis, I thought some of those interned persons after they had been interned, I thought brought quorum nobis petitions on that same thesis. Right. Yes. And so, again, I'm not sure if this avenue would be successful for Ms. St. John, of course. But how successful, but I do know that that, I think that would be an option, and that would be the appropriate avenue for someone who's no longer in custody. But for Ms. St. John, she's not in custody either here for 2254 purposes or for 2241 purposes, although that... But 2241 is not in this case, right? Exactly, Your Honor, because she's not contesting the, she's not challenging the removal or exclusion. So it's not, she's not, she's not challenging the removal, and so that is not in question in this case, which she's contesting. But if she was in 2241, you'd be the wrong party to sue, wouldn't you be? Yes, that's correct. She would have, it would be the wrong party to sue. And also, although this circuit isn't specifically adjusted, several other circuits have noted that even for 2241 purposes, it would have to be filed while the person is still in the country. Once they are deported, they are no longer in custody for habeas purposes. So even for 2241 purposes, but you're correct, Your Honor, it would not be the proper respondent. The respondent here, because it's not the proper custodian. She, for 2254 purposes, custody ended at the point that her, she was, she completed her sentence on December 31st, 2021, and she was released to immigration officials. Counsel, do you, do you have some insight into how this, how this case unfolded below the, I assume you asserted the time bar below? Yes. The district court simply chose not to deal with that and went directly to the, well, I mean, that is a kind of threshold issue. Correct, Your Honor. But that, that argument was made to the district court? It was. It was, it was made to the district court that on both grounds, there was, it was appropriate for dismissal, both on time bar grounds, it is clearly time barred, Ms. St. John filed her habeas petition 10 and a half years too late. And as a respondent notes in its brief, there is no, none of the statutory exceptions are applicable. She also does not qualify for equitable tolling. Her argument is that she didn't learn about this mechanism for finding the other witnesses until her attorney told her at that point. And there's no finding by the district court that that's, she's wrong in saying that, right? Well, Your Honor, there's no, the district court judge specifically said that she wasn't going to address the time bar issue, so there's no finding. No, there's no finding. So what is that, if we wanted to do it on time bar grounds, how would we resolve that basis for the claim of equitable tolling in the absence of a finding that it's not true when she asserts that? Well, I think this court... Would we have to remand counsel? I don't think so. I think this court can review it de novo. I don't think that it would have to remand for that purpose. It could if it wanted to. What would be the de novo review of what? Well, I think de novo review of the claim that there is some statutory exception, because that's a defense. Yeah, but the exception that's, you're not denying that equitable tolling could exist if she... No. And she says factually the thing she didn't know was that it was possible to find these other witnesses until 10 years later. Isn't that just a factual determination that would have to be made by somebody? Yes, it is a factual determination that would be made. Yes. And we don't have a finding on that one way or the other, not for any wrong reason, just we just don't have one. That's correct, Your Honor. That is correct. From the Commonwealth's perspective, is there a particular ground why we should, for instance, if we thought we had to remand, remand for the time bar versus just considering the jurisdictional? No, Your Honor, because it's very clear that the claim fails on custody grounds. And also, in the original petition, the respondents didn't fill out the normal petition, so it was laid out differently, and there wasn't necessarily, it wasn't clear that there was any claim there, that there was a reason for the time that it wasn't timely, the time bar issue. So there wasn't any, I don't know that it was clear that there was any affirmative defense being presented, but again, I think it's very simple here to just deny the petition, dismiss the petition on custody grounds, because as I said, it's a jurisdictional issue. There are no, and I also want to point out here that there are no extraordinary circumstances here that, even if there were, again, it's a jurisdictional issue, but there are no extraordinary circumstances. Just so I get the logic of why you think there's no custody, this is fanciful, but suppose rather than it saying, in consequence of the conviction, the effect is that after you're moved, you can't come back into the country. Suppose Massachusetts had a rule that on the basis of this conviction, you can't come back into the state. Would you say that restraint on her coming back into the state means she's still in custody? The restraint of not coming back into the state, I don't, I'm not, I don't know, because I think it might be a collateral, that may still be a collateral consequence, that could still be a collateral consequence. What I'm trying to tease out is whether your contention is related to the significance of the bar or to the fact that the bar is being imposed by a different sovereign. I think it is both, Your Honor. I think that, one, it is the sovereign, but it is also, I think, that there has to be some limit. Because if, if, I take it, if, if, let's just say she was in custody by immigration officials because immigration had a rule that we detain anybody who's been convicted of murder. So we're just going to detain her on that basis. Wouldn't your position be the 2254 habeas petition fails? Because with respect to you, she's not in your custody. Right. And so that's just a point, that's not about how significant the restraint is, whether the restraint could in, could conceivably be a means of holding someone in custody. That's just a point about whether the person holding you in custody is the person you're  Yes. And no, absolutely, Your Honor. So I definitely agree with that in that once she, once her sentence is completed, I'm just going to finish this question if that's okay. Once her sentence is completed and she goes to, and she's in immigration, with immigration officials, I 100% agree that at that point she's no longer in custody and that is, that closes the issue. But I also, I want to make clear that when I said, I'm not sure that I would say that not being able to come into a state isn't a collateral consequence. I think there has to be some, it has to be some restraint on your liberty. And that, that probably, yes, that is, that is. It's not like just registering for sex offender because that's just registering. Right, right. This is the actual, your movements are being constrained. So I think that's what's giving some force to the idea of custody.  I think, I think that is probably, yes, I think that is probably, that is probably true. Although, it depends on the extent of the restraint where you're not under some type of, you don't have to answer to a court, you don't have to, it's not a role type situation. So perhaps, yes. But in this circumstance, we are not there. She is not in the country. Just depends. Just a question, please. On the, on the time bar issue, with respect to equitable tolling, if you're invoking equitable tolling, you have to establish reasonable diligence in pursuing relief and extraordinary circumstances, which you've just alluded to, there may indeed be an incomplete record on what she did or did not do in trying to seek relief. But on the issue of extraordinary circumstances, would you suggest that this record would permit us to conclude as a matter of law that there was nothing extraordinary about the circumstances here that would justify application of equitable tolling and relatedly on actual innocence? It seems all of the arguments that are being made about actual innocence just don't, they don't make it because there are disputes about what happened. A jury might conclude that the person was not guilty. But we don't have a recantation, we don't have DNA evidence, we don't have somebody else confessing to the crime, which is what you have in the actual innocence cases. A long way about the, the time bar, even on this record, might be available to us as a basis for affirming. You probably agree with that, right? I do agree with that, Your Honor. I do think that this Court can determine there are no extraordinary circumstances, certainly on this record, because she, she hasn't, she hasn't presented any extraordinary circumstances and because the, the absence of an attorney, as this Court, as the Supreme Court said in Thompson, there's no constitutional right to post, attorney during post-conviction proceedings. And the only extraordinary circumstances cited by the petitioner is really the fact that she couldn't get court appointed, that, that CPCS would not get, provide her with counsel. And that is simply not, does not rise to the level of an extraordinary circumstance. And with respect to the actual innocence portion of the question, yes, she certainly cannot meet the actual innocence exception. As the, as the Supreme Court made clear in Schlupf v. Dello, the, this is a very high bar to meet and the evidence has to be more than speculative in nature. Here, this is evidence that two, there are two other people with whom the victim was romantically involved may have committed the offense because they had some prior domestic abuse involvement with, with other people or, and, or with the victim herself. At the motion judge, in denying the motion for new trial, one of the issues presented in the motion for new trial was newly discovered evidence. And the motion judge, in reviewing that evidence, which is the same evidence that the petitioner is putting forth shows her actual innocence, the motion judge said the evidence was too remote and speculative, it would not even be admissible at trial. And here, we have the petitioner arguing that it was ineffective assistance of counsel for the, for counsel not to find and put on that evidence. Also, once some of that evidence wasn't even available at the time that, of the, of the trial. Thank you. Thank you, Your Honor. Just a few points. Coram Novus is where... I'm sorry? Michael Ugalini, I represent the petitioner. I want you to start again once you're in front of the microphone. Go ahead. Michael Ugalini, I represent the petitioner. To suggest that Coram Novus is a possibility here is a joke. Coram Novus is where a court corrects its own mistakes. We asked the court that convicted her to vacate their conviction. They refused. If you look at their opinion, they left out all the pertinent evidence. There's a photograph where the guy who did this to her wrote, I don't want you anyway. That was McGowan, the guy who was having an intimate relationship with her. We can see from the abuse petitions exactly what happened. She said during the trial, I just broke up, I just made official my new relationship with a man named Kevin Rivera. And the guy breaks in and he writes, I don't want you anyway, using one of the kid's crayons. The cops, the prosecutor... You have a minute left. Yes. And I don't think this is addressing the custody issue. It's not addressing the custody issue, well, it's a rebuttal and she spoke at great lengths about the merits. And the evidence of actual innocence is overwhelming. The abuse prevention orders, one of which this guy McGowan threatened to harm her if she breaks up with him. That's exactly what happened. His paternity of her daughter, her youngest daughter, making it fair to infer that he was intimate with her at the time that this happened. Her new boyfriend, which had just been made official. The graffiti written on the wall, I don't want you anyway, making it fair to infer that the victim had just broken up with him. The lack of damage to the back door, there's a photo of, a police photo of the back door taken on the night of the incident that shows a piece of plywood that's in perfect condition that you couldn't get your hand up under there and unlock the door by sticking your hand through the pane of glass. And the real funny one is, the door was fitted with a double cylinder lock. A double cylinder lock can only be locked with a key from either side, either from the outside or the inside. This lady couldn't have been the perpetrator. She didn't have a key to her apartment. They ignore that one. At trial, their theory of entry was through the pane of glass. Thank you counsel. That concludes argument in this case.